UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

          Plaintiff,

v.

Ethan Mark Danielson,

          Defendant.

Case No. 22-cr-299 (MJD/LIB)


**ORDER AND
REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge, pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Ethan Mark Danielson's various pretrial Motions. The Court held a Motions Hearing on March 17, 2023, regarding Defendant's pretrial motions.

At the Motions Hearing, the parties requested, and were granted, the opportunity to submit supplemental briefing. Upon the completion of that briefing, Defendant's Motion to Suppress, [Docket No. 28], was taken under advisement.

For the reasons discussed herein, Defendant's Request for Discovery Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, [Docket No. 20], is **GRANTED in part** and **DENIED in part**; Defendant's "Brady Motion," [Docket No. 21], is **GRANTED in part** and **DENIED in part**; Defendant's Motion to Compel Production of Giglio Material, [Docket No. 23], is **GRANTED in part** and **DENIED in part**; and Defendant's Request for Pretrial Notice of Intent to Introduce Other Crimes Evidence, [Docket No. 25], is **GRANTED in part** and **DENIED in part**.

Further, for reasons discussed herein, the Court recommends that Defendant's Motion to Suppress, [Docket No. 28], be **DENIED**.

I.      **Background and Statement of Facts**

   **A.  Background**

   Defendant Ethan Mark Danielson is charged with one (1) count of being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) and 924(a)(8), as well as one (1) count of possession of an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871. (Indictment [Docket No. 1]). Defendant has entered a plea of not guilty as to both counts in the Indictment.

   **B.  Facts**[1]

   On January 13, 2022, Special Agent Jason Wambach ("SA Wambach") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives interviewed a confidential informant ("CI 1") at the Becker County jail in Detroit Lakes, Minnesota. (Gov't's Ex. 1).[2] During this interview, CI 1 informed SA Wambach that Defendant built firearms in his father's shop which was located at Defendant's residence where he resided with his parents (the "Subject Property"). (Id.). CI 1 further informed SA Wambach that in addition to manufacturing firearms, Defendant also converted some firearms to "fully automatic firearms," sold the privately made firearms to others, and exchanged the firearms for methamphetamine. (Id.). CI 1 also informed SA Wambach that Defendant buried firearms in large plastic containers; CI 1 had observed one such container on the Subject Property before it had been buried. (Id.). CI 1 also observed "small CO2 cannister bombs" or "cricket bombs" at the Subject Property. (Id.).

   Following the interview, SA Wambach conducted a National Firearms Registration and Transfer Record check to determine that Defendant did not then currently have any National

---

[1] The facts contained in this section are derived from the testimony of Special Agent Jason Wambach at the March 17, 2023, Motions Hearing, as well as, the parties' exhibits admitted in the present case.

[2] Government's Exhibit 2 is the warrant application, supporting affidavit, and warrant to search Defendant's residence and property. At the Motions Hearing, the Government, without objection, offered the warrant application, supporting affidavit, and warrant into evidence as Government's Exhibit 2. (Tr. 24).

Firearms Act items registered to him. (Id.). SA Wambach also reviewed records for Defendant's driver's license which provided Defendant's address as the Subject Property. (Id.).

On March 16, 2022, Confidential Informant 1 ("CI 1"), a known individual, informed law enforcement that CI 1 would participate in a controlled purchase of firearm related evidence from Defendant at the Subject Property. (Id.). Immediately prior to the controlled purchase CI 1 was provided with "audio/video surveillance equipment that allowed law enforcement to monitor conversations in the vicinity of" CI 1, and law enforcement searched both CI 1's vehicle and person for contraband before CI 1 was provided with U.S. currency to complete the controlled purchase from Defendant. (Id.). Following this interaction, law enforcement maintained physical surveillance of CI 1's vehicle as it drove from the meeting with law enforcement to the Subject Property. (Id.).

Upon CI 1's arrival at the Subject Property, CI 1 and Defendant walked into a shop building located on the property. (Id.). The two discussed Defendant's selling of firearms and silencer devices, and law enforcement observed Defendant smoking what law enforcement believed to be methamphetamine. (Id.). CI 1 then informed Defendant that he wished to purchase a firearm or silencer device, and Defendant agreed to sell a silencer device to CI 1 for $600.00. (Id.). Before completing the transaction, Defendant made alterations to the silencer device so that it could not be dismantled to learn how it was manufactured. (Id.). Defendant and CI 1 also discussed fully automatic weapons which Defendant manufactured using forced reset triggers. (Id.). Defendant offered to manufacture these firearms for CI 1, but he informed CI 1 that he would need payment in advance to purchase component parts. (Id.).

After completing the transaction and leaving the Subject Property, CI 1 drove to meet law enforcement officers, including SA Wambach. (Id.). Law enforcement maintained continued

physical surveillance of CI 1's vehicle from the time it left the Subject Property until the time it reached the meeting with law enforcement where it was searched for contraband a second time. CI 1 provided SA Wambach with the silencer device, and he informed SA Wambach that he had observed several small "cricket bombs" near a table at the Subject Property. (Id.).

On May 12, 2022, CI 1 agreed to make a second controlled purchase from Defendant at the Subject Property. (Id.). CI 1 again met with law enforcement where CI 1 was provided with audio and visual equipment to monitor conversations around CI 1, and both CI 1's vehicle and person were searched for contraband prior to the controlled purchase. (Id.). Law enforcement maintained physical surveillance of CI 1's vehicle from the meeting with law enforcement until reaching the Subject Property. (Id.). CI 1 met Defendant in a shop building on the subject Property. (Id.). During the approximately 32-minute interaction, Defendant and CI 1 discussed sub-sonic ammunition, and on three occasions, they exited the building to discharge firearms with and without a silencing device to hear the difference. (Id.). During this interaction, CI 1 agreed to purchase, and did purchase, three silencer devices for $400.00 per unit. (Id.). Defendant also provided CI 1 with thirteen .22 caliber rounds of live ammunition free of charge. (Id.).

After completing the second controlled purchase and leaving the Subject Property, CI 1 drove to meet law enforcement officers, including SA Wambach. (Id.). Law enforcement again maintained continued physical surveillance of CI 1's vehicle from the time it left the Subject Property until the time it reached the meeting with law enforcement where it was searched for contraband. CI 1 provided SA Wambach with three silencer device and thirteen .22 caliber live rounds of ammunition. (Id.). None of the silencer devices were marked with manufacturer, model, or serial information. (Id.).

On August 11, 2022, SA Wambach spoke on the telephone with CI 1 who informed SA Wambach that CI 1 had spoken with and observed Defendant driving a 2022 white Chevrolet Silverado with a Minnesota Dealer License plate. (Id.).[3] On August 11, 2022, CI 1 also informed SA Wambach that while CI 1 had been in the shop building on the Subject Property earlier that day, CI 1 had observed the following materials: "metal cylindrical tubes (consistent with silencer device parts)"; items which "appeared to be multiple completed silencer devices; a .45 caliber pistol and a .308 caliber rifle, both with silencer devices attached to them"; and "a .223/5.56 mm multi-caliber barreled rifle modified to function as a fully automatic firearm." (Id.). CI 1 also observed a "bucket containing small empty metal cylinders (consistent with Co2 [sic] tubes used for paintball or air guns) adjacent to containers of smokeless gun powder and measuring devices for powder" with "fusing cord hanging on a wall nearby." (Id.).

On August 16, 2022, SA Wambach submitted an application for a federal search warrant seeking a search warrant authorizing law enforcement to search the Subject Property. (Id.). In his affidavit submitted in support of the application for the August 16, 2022, Search Warrant, SA Wambach provided the details of law enforcement's investigation of Defendant, including all the facts provided above. SA Wambach attached to his affidavit a description of the Subject Property, including an aerial picture of the property, the street address of the property, a description of the property, and global positioning system coordinates. (Id.).[4]

---

[3] SA Wambach conducted a search of the Minnesota Driver and Vehicle Services database locating a vehicle registered to Defendant's father which matched CI 1's description of the vehicle Defendant had been driving. (Id.). SA Wambach also verified that Defendant's father does not possess a Federal Firearm License or Federal Explosive License to manufacture or sell firearms or explosives. (Id.).

[4] At the March 17, 2023, Motions Hearing, SA Wambach described the Subject Property as approximately 20 acres in size containing a main residence, a "pretty significant" sized shop building, and other smaller outbuildings. (Tr. 25).

On August 16, 2022, the Honorable Becky R. Thorson, Magistrate Judge for the United States District Court, District of Minnesota, determined that probable cause existed to support the issuance of the August 16, 2022, Search Warrant. (Id.).

On the morning of August 19, 2022, approximately twenty law enforcement officers, including SA Wambach, went to the Subject Property to execute the August 16, 2022, Search Warrant. Upon approaching the main residence on the Subject Property, SA Wambach learned that Defendant was not in the main residence. (Tr. 26–29). Other law enforcement officers observed Defendant outside the shop building where he was holding a hatchet in his hand while cutting wood, and the officers also observed a firearm in Defendant's waistband. (Tr. 26–29). After approaching Defendant, the officers handcuffed Defendant. (Tr. 26–29). After law enforcement officers determined that there were no officer safety issues on the Subject Property, Defendant was release from handcuffs. (Tr. 26–29). SA Wambach informed Defendant that he wanted to speak with the Defendant, and the two walked to the residence. (Tr. 26–29).

After SA Wambach and Defendant approached the residence, SA Wambach, Defendant, and an investigator from the Becker County Sheriff's office sat at a patio table outside of the main residence to talk. (Tr. 31). The conversation lasted approximately thirty minutes and was audio recorded in its entirety. (Gov't's Ex. 1).[5]

SA Wambach began the interview by explaining that he was sitting with Defendant during the execution of a search warrant and getting identification information from Defendant. (Id.). SA Wambach then informed Defendant that he was free to leave at any time. (Id.). SA Wambach reiterated that although Defendant may not feel like he is free to leave given the

---

[5] Government's Exhibit 1 is a copy of the audio recording of the August 19, 2022, interview involving Defendant, SA Wambach, and the investigator from the Becker County Sheriff's office. (Gov't's Ex. 1). At the Motions Hearing, the Government, without objection, offered the copy of the audio recording into evidence as Government's Exhibit 1. (Tr. 33).

number of law enforcement officers on the property, Defendant was in fact free to leave. (Id.). SA Wambach then orally advised Defendant of his Miranda[6] rights; SA Wambach also informed Defendant that although he was advising Defendant of his Miranda rights, Defendant was not being arrested. (Id.). SA Wambach then asked if Defendant understood his rights. (Id.). Defendant affirmatively acknowledged that he understood his rights and that he was not being arrested. (Id.). SA Wambach then ask Defendant if he, with his rights in mind, was willing to speak with law enforcement officers, and he again informed Defendant that if Defendant chose to speak with law enforcement, he could stop speaking at any time. (Id.). Defendant responded in the affirmative. (Id.).

SA Wambach explained to Defendant that the law enforcement officers were searching the Subject Property pursuant to a search warrant which a judge had signed after finding that probable cause existed to search the Subject Property. (Id.). SA Wambach further explained the types of items for which law enforcement officers were searching. (Id.). SA Wambach informed Defendant that the search had already revealed certain evidence, including "a number of firearms . . . attached to what appears to be silencer devices"; items "related to the manufacture of firearms and silencers"; and "drug evidence." (Id.). SA Wambach informed Defendant that although the officers were not specifically looking for "drug evidence," they were aware that Defendant "used drugs." (Id.).

SA Wambach then made the following statement:

> The other, I wanna tell you that because this is an opportunity for you to right now say "Okay I wanna come clean. I wanna cooperate," and the benefit of that is we don't make decisions on charging and who's going to get charged. Those are made by attorneys, whether its federal prosecutors or state prosecutors. But I will tell you that this interview, this discussion is going to get to them. And I will do a report on it, so they'll know initially whether you wanted to cooperate. And cooperation at this point, starting basic is where there's illegal items on the

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

property, not just in the shop, but on the other parts of the property—if there's guns or other items that are hidden, buried, hidden under vehicles or anything like that, we've got a K9 dog that sniffs firearms here, ok. We've got metal detectors, so we're going to search those areas regardless, but this is your chance where you can say, "Okay, I wanna own up to whatever's going on, I'm willing to assist with it." Does that make a difference? Well, I can tell you that not only does it make our investigation go smoother, but it does show that you're taking responsibility and cooperating. Prosecutors made aware of that, they want to know that stuff, it can be helpful. There's no guarantee with it, right. And I can, I will tell you that if you do decide to talk with us and admit where some more evidence might be, I'm not going to put handcuffs on you and take you to jail, because you admitted to some illegal doing. Okay. I could do that right now if I wanted. We've already found stuff. I didn't want to do that. So, our plan regardless right now—you know unless you tell me where there's a dead body buried or something obviously aside from something really extreme—regardless of what you say, when we leave, you're staying at home. That make sense?

(Id.). Defendant responded, "Yep." (Id.). SA Wambach then re-asked whether Defendant was willing to speak with law enforcement to which Defendant responded, "Yep. Yeah. I take responsibility for it." (Id.). Defendant and SA Wambach then began discussing the circumstance of the present case, including who owned the items which had already been found during the search, the frequency of Defendant's use of methamphetamine, and Defendant's manufacturing of firearms and silencers. (Id.).

Approximately twenty-one minutes into the interview, Defendant's mother approached the interview to ask whether Defendant had "to answer all this stuff without a lawyer." (Id.). SA Wambach began to respond when Defendant responded, "No, I don't Mom." When Defendant's mother said Defendant should not continue to the interview without a lawyer because the officers were "just going to use stuff against you more than they already are," Defendant responded, "Yeah, I know." (Id.). SA Wambach then reiterated that Defendant could stop at any time. (Id.).

Following Defendant's interaction with his mother, he and SA Wambach continued to discuss the circumstances underlying the present case. (Id.). SA Wambach then concluded the interview. (Id.).

## II.    Defendant's Request for Discovery Pursuant to Rule 16 of the Federal Rules of Criminal Procedure. [Docket No. 20].

Defendant's Motion here, in part, seeks discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure. (See Def.'s Mot. [Docket No. 20]). For example, Defendant seeks disclosure of any written, recorded, or oral statements made by Defendant or copies thereof in the possession, custody, or control of the Government, as well as, a copy of his criminal history. (See Id.). Furthermore, Defendant requests permission to inspect and/or copy books, papers, documents, photographs, and tangible objects in the possession, custody, or control of the Government and which are material to the preparation of the defense or are intended for use by the Government as evidence in chief at the trial, or were obtained from or belonged to the Defendant. Defendant also requests permission to inspect and copy the results of any physical or mental examinations or scientific tests or experiments.[7]

Defendant's request for Rule 16 materials, such as those identified above, is granted, as set forth herein. The Government shall disclose any subsequently acquired materials or information which are specifically responsive to Rule 16 to the Defense as soon as said responsive materials are discovered by the Government and in any event by no later than fourteen (14) days before trial.

This is not, however, the only discovery Defendant seeks in the present Motion. Other than the first two introductory paragraphs, Defendant's "Request for Discovery Pursuant to Rule 16 of the Federal Rules of Criminal Procedure," [Docket No. 20], appears to be merely a quotation of Rule 16 itself. For example, Defendant's Motion includes the portion of Rule 16

---

[7] Pursuant to Rule 16(a)(1)(G), Defendant also requests written summaries of any expert opinion the Government intends to use in its case-in-chief. (Id.). This request is, however, moot because the Court previously issued an Order, [Docket No. 27], directing the parties to disclose the identity of any expert witness and make all expert disclosures required by Federal Rule of Criminal Procedure 16 no later than twenty-eight days before trial. Therefore, to the extent Defendant's Motion, [Docket No. 20], seeks an Order of this Court directing the Government to disclose a written summary of expert testimony it intends to use under Rule 702, 703, and 705 of the Federal Rules of Evidence as evidence at trial, Defendant's Motion, [Docket No. 20], is denied as moot.

relating to "Organizational Defendant[s]," and it can arguably be read as seeking discovery related to an "Organizational Defendant." There is, however, no such defendant in the present case. Defendant's Motion also contains the portion of Rule 16 which provides the possible consequences of a party failing to comply with Rule 16, and again, the Motion can arguably be read as seeking the imposition of such consequences upon the Government. However, on the record now before the Court, there has not been—and Defendant does not argue that there has been—any failure to comply with Rule 16. These requests are inapplicable to the present case, and other than simply quoting Rule 16, Defendant fails to provide any legal authority in support of these requests. Therefore, to the extent the Defendant's Motion, [Docket No. 20], seeks the disclosure of the materials or information inapplicable to the circumstances of the present case or outside the scope of Rule 16, Defendant's Motion, [Docket No. 20], is denied.[8]

For all the reasons discussed above, Defendant's "Request for Discovery Pursuant to Rule 16 of the Federal Rules of Criminal Procedure," [Docket No. 20], is granted in part and denied in part. To the extent the relief sought in Defendant's "Request for Discovery Pursuant to Rule 16 of the Federal Rules of Criminal Procedure," [Docket No. 20], was not expressly granted herein, it is denied.

## III.    Defendant's "Brady Motion," [Docket No. 21], and Defendant's Motion to Compel Production of Giglio Material. [Docket No. 23].

Defendant seeks disclosure of evidence favorable to him which would fall within the authority of Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972); and their progeny. (See Def.'s Mots. [Docket Nos. 21, 23]). Defendant seeks immediate disclosure of this evidence. (See Id.).

---

[8] The denial of this portion of Defendant's Motion does not excuse the Government from complying with any portion of Rule 16 if the circumstances of the present case were to change nor does it prevent the Court from imposing sanctions upon any party if said party fails to comply with Rule 16.

In its written response, the Government acknowledged its duty to disclose responsive materials and information under <u>Brady</u>, <u>Giglio</u>, and their progeny. The Government asserts that it has already made substantial disclosures of responsive materials and information under <u>Brady</u>, <u>Giglio</u>, and their progeny. The Government objects to Defendant's Motions to the extent they seek materials beyond the requirements of <u>Brady</u>, <u>Giglio</u>, and their progeny.

To the extent it seeks materials responsive to <u>Brady</u>, <u>Giglio</u>, and their progeny, Defendant's "<u>Brady</u> Motion," [Docket No. 21], and Defendant's Motion to Compel Production of Giglio Material, [Docket No. 23], are granted, as set forth herein. The Government will disclose any and all remaining and/or subsequently discovered, obtained, or obtainable material responsive to <u>Brady</u> to the Defense as soon as said responsive materials are discovered by the Government.[9] The Government will disclose materials which are responsive to <u>Giglio</u> and related to the impeachment of the Government's witnesses to be called at trial by no later than seven (7) days before trial or when the presiding trial judge requires disclosure of trial witnesses, whichever is earlier.[10] To the extent the relief sought in Defendant's "<u>Brady</u> Motion," [Docket No. 21], or Defendant's Motion to Compel Production of Giglio Material, [Docket No. 23], was not expressly granted herein, it is denied.

---

[9] The Court notes that Defendant's "<u>Brady</u> Motion," [Docket No. 21], uses broad language in identifying the evidence which Defendant believes is responsive to <u>Brady</u>. However, in <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), the United States Supreme Court "emphasized the discretion of the *prosecutor*, not the trial judge, in deciding what evidence is producible under <u>Brady</u>." <u>United States v. Garrett</u>, 238 F.3d 293, 304 n.4 (5th Cir. 2000) (emphasis added). The Sixth Circuit has also explained that "while the <u>Brady</u> rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure." <u>United States v. Clark</u>, 957 F.2d 248, 251 (6th Cir. 1992). That being said, "[i]f [the Government] fails to comply adequately with a discovery order requiring it to disclose <u>Brady</u> material, it acts at its own peril." <u>Id.</u> Accordingly, the Court encourages the Government to carefully evaluate the materials in its possession in light of a liberal understanding of its <u>Brady</u> obligations.

[10] The Government's disclosure of materials responsive to <u>Giglio</u> and related to the impeachment of the Government's witnesses to be called at trial shall include the criminal history, if any, for each trial witness.

IV.    **Defendant's "Request for Pretrial Notice of Intent to Introduce Other Crimes Evidence." [Docket No. 25].**

Defendant seeks disclosure of any "bad act" or "similar course of conduct" evidence that the Government intends to offer at trial pursuant to Federal Rule of Evidence 404(b). (See Def.'s Mot. [Docket No. 25]). Defendant further seeks an Order of this Court granting him leave to file future, hypothetical "motions for severance, suppression, and/or in limine, as may be indicated by the government's response and a review of any Rule 404(b) evidence . . . ." (Id.).

In its written response, the Government acknowledged its obligation to comply with Rule 404(b). The Government objects to the extent Defendant seeks any relief outside the scope of Rule 404(b).

In relevant part, Rule 404(b)(3) provides that the Government must "provide reasonable notice of any" Rule 404(b) "evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). In that notice, the Government must "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B).

Defendant's Motion for Disclosure of Rule 404(b) Evidence, [Docket No. 25], is granted in part and denied in part, as set forth herein. The Court orders the Government to disclose to the Defense as soon as practicable, and in no event later than fourteen (14) days before trial, formal notice of any specific 404(b) evidence it intends to offer, as well as, the purpose for which it intends to offer it into evidence at trial.[11] As noted above, Defendant also moves this Court for leave to file future motions related to the received information. To the extent Defendant is asking the Court to establish "good cause" to bring future motions, such "good cause" cannot be

---

[11] Federal Rule of Evidence 404(b) does not extend to evidence of acts which are "intrinsic" to the charged offense. United States v. Adediran, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence); see United States v. Williams, 900 F.2d 823 (5th Cir. 1990).

determined until future motions are brought. Therefore, to the extent that Defendant seeks leave now to file future motions based on the receipt of unknown, hypothetical information, the motion is denied without prejudice.

**V.    Defendant's Motion to Dismiss the Indictment. [Docket No. 28].**[12]

As observed above, Defendant is charged with one (1) count of being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8) ("Count 1"), as well as, one (1) count of possession of an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871 ("Count 2"). (Indictment [Docket No. 1]).

Title 18 U.S.C. § 922(g)(3) provides that "[i]t shall be unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance" as defined by statute "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Title 26 U.S.C. § 5861(d) provides that "[i]t shall be unlawful for any person . . . to receive or possess a firearm," as defined by 26 U.S.C. § 5845(a) to include short barrel rifles and silencers, "which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).

Defendant moves to dismiss Count 1 and Count 2 of the Indictment. In support of this request, Defendant argues that following the United States Supreme Court's opinion in New

---

[12] Defendant's Motion, [Docket No. 28], is actually four distinct requests for relief. As more fully discussed below, the Motion contains a request to dismiss Count 1 of the Indictment as unconstitutional; a request to dismiss Count 2 of the Indictment as unconstitutional; a request to suppress his August 19, 2022, statements to SA Wambach; and a request to suppress evidence found as a result of the August 19, 2022, search. The Court will address Defendant's requests for dismissal of the Indictment separately from his suppression requests, and the Court will discuss the two requests to suppress separately from each other as well. The Court will, however, address Defendant's requests for dismissal concurrently because Defendant raises the same argument in support of each of his request to dismiss.

York State Rifle & Pistol Association, Inc. v. Bruen, 142 S.Ct. 2111 (2022),[13] the charging statutes, 18 U.S.C. § 922(g)(3) and 26 U.S.C. § 5861(d), are unconstitutional as violative of the Second Amendment to the United States Constitution. (Def.'s Mem. [Docket No. 29] at 12, 21–22). More specifically, Defendant argues that "Count 1 must be dismissed on the grounds that the statute making it a felony for an unlawful user of controlled substances to possess a firearm is unconstitutional in violation of the Second Amendment" because "[p]rohibitions on possession of firearms by an unlawful user of controlled substances were not in existence at the time of The Founding." (Id. at 21). Defendant urges the Court to adopt the opinions asserted in United States v. Harrison, No. 22-cr-328 (PRW), 2023 WL 1771138 (W.D. Okla. Feb. 3, 2023), where the Court dismissed an Indictment after finding § 922(g)(3) unconstitutional in light of Bruen. Regarding Count 2, Defendant asserts that it must be dismissed as unconstitutional following Bruen because "statute(s) declaring possession of an unregistered firearm (lacking a serial number, etc.) . . . were not in existence at the time of the [sic] The Founding of the United States of America[.]" (Def.'s Mem. [Docket No. 29] at 22).

As the overwhelming majority of Courts have likewise concluded, this Court finds Defendant's argument here to be without merit. In making his argument, Defendant relies on an overbroad interpretation of Bruen; an interpretation which in fact contradicts some of the limiting language in Bruen itself. See, e.g., Bruen, 142 S.Ct. at 2122, 2124–25, 2131, 2133, 2134, 2138, 2150 (repeatedly limiting its discussion to law-abiding citizens). Both Defendant's interpretation of Bruen and the rationale proffered in Harrison largely ignore material portions of

---

[13] In Bruen, the Supreme Court purported to reaffirm its prior holdings which found that the Second and Fourteenth Amendments protect a law-abiding individual's right to possess a handgun for self-defense. Id. Relying on its prior opinions interpreting the Second Amendment, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. at 2126 (citing District of Columbia v. Heller, 554 U.S. 570 (2008)).

the Court's reasoning in <u>Bruen</u>, including its limitation to law-abiding citizens. Defendant's interpretation of <u>Bruen</u> also largely ignores the Supreme Court's reasoning in <u>Heller</u>[14] despite the fact that the <u>Bruen</u> Court repeatedly provided that <u>Bruen</u> was merely an extension of the rationale in <u>Heller</u> and specifically indicated that <u>Bruen</u> did not alter <u>Heller</u>.

 The overwhelming majority of Courts to consider the exact argument Defendant raises here have flatly rejected the argument. <u>See, e.g.</u>, <u>United States v. Saleem</u>, No. 3:21-cr-86 (FDW/DSC), 2023 WL 2334417, at *1 (W.D.N.C. Mar. 2, 2023) (rejecting this same argument in a case involving short-barrel rifles and silencer devices);<u>United States v. Sredl</u>, No. 3:22-cr-71 (RLM/MGG), 2023 WL 3597715, at *1–3 (N.D. Ind. May 23, 2023) (rejecting the argument that the prohibition against possession of unregistered firearms violates an individual's Second Amendment right to keep and bear arms in light of <u>Bruen</u> and concluding that § 5861(d) does not infringe on any Second Amendment-protected activity); <u>United States v. Costianes</u>, No. 21-cr-458, 2023 WL 3550972, at *5 (D. Md. May 18, 2023); <u>United States v. Posey</u>, No. 2:22-cr-83 (JD), 2023 WL 1869095, at *9 (N.D. Ind. Feb. 9, 2023); <u>Fried v. Garland</u>, No. 4:22-cv-164, 2022 WL 16731233, at *7 (N.D. Fla. Nov. 4, 2022); <u>United States v. Black</u>, No. 22-cr-133, 2023 WL 122920, at *4 (W.D. La. Jan. 6, 2023); <u>United States v. Daniels</u>, 610 F. Supp. 3d 892, 897 (S.D. Miss. 2022); <u>United States v. Villalobos</u>, No. 3:19-cr-40, 2023 WL 3044770, at *12 (D. Idaho Apr. 21, 2023); <u>United States v. Lewis</u>, No. 22-cr-368, 2023 WL 187582, at *4 (W.D. Okla. Jan. 13, 2023); <u>United States v. Seiwert</u>, No. 20-cr-443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022); <u>United States v. Randall</u>, No. 4:22-cr-99, 2023 WL 3171609, at *3–4 (S.D. Iowa Feb. 14, 2023); <u>United States v. Parker</u>, No. 22-cr-4072, 2023 WL 3596453 (N.D. Iowa Apr. 25, 2023); <u>United States v. Royce</u>, No. 1:22-cr-130, 2023 WL 2163677, at *1 (D.N.D. Feb. 22, 2023). This Court agrees with the well-reasoned, persuasive rational of these Courts.

---

[14] <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008).

The <u>Bruen</u> Court's limiting its discussion to law-abiding citizens raises serious doubts as to whether Defendant's conduct is protected by the Second Amendment when Count 1 specifically charges him with being an unlawful user of controlled substance in possession of a firearm. <u>See e.g.</u>, <u>Bruen</u>, 142 S.Ct. at 2122, 2124–25, 2131, 2133, 2134, 2138, 2150 (repeatedly limiting its discussion to law-abiding citizens).[15] The Court need not affirmatively decide this issue.

Even assuming solely for the sake of argument that Defendant's conduct is protected by the Second Amendment, under the analysis contemplated in <u>Bruen</u>, "[t]he historical record shows a tradition of regulating firearm possession by individuals using intoxicating substances which is analogous to § 922(g)(3)." <u>Posey</u>, 2023 WL 1869095, at *9. In the alterative, § 922(g)(3) is also "analogous to historical regulations preventing dangerous persons, such as felons and the mentally ill, from possessing firearms." <u>Posey</u>, 2023 WL 1869095, at *9.

Moreover, regardless of the changes <u>Bruen</u> may have "brought to the Second Amendment landscape, inclusion of dangerous and unusual weapons," such as those weapons prohibited by § 5861(d), "in the Second Amendment right isn't one such change. Possession of dangerous and unusual weapons was excluded from the Second Amendment right before <u>N.Y. State Rifle v. Bruen</u>, and their exclusion continues after <u>N.Y. State Rifle v. Bruen</u>." <u>Sredl</u>, 2023 WL 3597715, at *3.

Therefore, to the extent Defendant's Motion, [Docket No. 28], seeks an Order of this Court dismissing Count 1 and Count 2 of the Indictment, the undersigned recommends that Defendant's Motion, [Docket No. 28], be **DENIED**.

---

[15] <u>See</u> <u>accord</u> <u>United States v. Jackson</u>, No. 22-2870 Order at 8–15 (8th Cir. June 2, 2023) (concluding that 'history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society" and rejecting the argument that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to a defendant where said defendant's prior drug offenses were non-violent and failed to show that he was more dangerous that the average person).

**VI.    Defendant's Motion to Suppress Statements. [Docket No. 28].**

Defendant seeks an Order of this Court suppressing his August 19, 2022, recorded statements to SA Wambach during the interview with SA Wambach and the investigator from the Becker County Sheriff's office. In support of this request, Defendant argues that these statements where involuntary and the "product of unconstitutional implied promises of leniency." (Def.'s Mem. [Docket No. 46] at 12, 22–23).[16]

Defendant was not subject to custodial interrogation during the August 19, 2022, interview. However, even non-custodial statements made to law enforcement may be suppressed if the statements were not voluntarily made to law enforcement. United States v. Brave Heart, 397 F.3d 1035, 1040 (8th Cir. 2005). Nevertheless, as the Eighth Circuit has noted, "it is a rare

---

[16] Although Defendant's Memorandum is littered with terminology related to Miranda, Defendant does not assert that his August 19, 2022, statements were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). (See Def.'s Mem. [Docket No. 46]). In his Memorandum, Defendant acknowledges that at the time he made his August 19, 2022, statements the circumstances were "perhaps not technically fully custodial" but were rather "a highly charged, intimidating situation." (Id. at 22). Similarly, Defendant acknowledges that SA Wambach advised Defendant of his rights pursuant to Miranda, (Id.), and the recording of the interview demonstrates that Defendant acknowledged his understanding of his rights and waived those rights. Moreover, even if Defendant argued that his waiver of his Miranda rights was constitutionally ineffective, that challenge would fail. The totality of the circumstances demonstrates that Defendant was not in custody for the purposes of Miranda at the time he made his August 19, 2022, statements because on several occasions before and during the interview, SA Wambach informed Defendant that the questioning was voluntary and that Defendant was free to leave, even if he did not feel like he was free to leave; because on the record now before the Court, there is no indication that either SA Wambach, the investigator from the Becker County Sheriff's office, or any other government official took any action which a reasonable person would have felt impeded Defendant's ability to walk away from the interview or terminate the interview; because the record now before the Court lacks any indication that law enforcement officers used any strong-arm tactics or deceptive stratagems during the August 19, 2022, interview; because the atmosphere of the August 19, 2022, interview was not so "police dominated" that it resembled formal arrest; and because the Defendant was not arrest at the conclusion of the interview. United States v. Axsom, 289 F.3d 496, 506 (8th Cir. 2002) (providing factors to be considered); United States v. New, 491 F.3d 369, 373 (8th Cir. 2007); United States v. Brown, 990 F.2d 397, 400 (8th Cir. 1993); United States v. Sanchez, 676 F.3d 627, 630–31 (8th Cir. 2012); United States v. Griffin, 922 F.2d 1343, 1352 (8th Cir. 1990); United States v. Havlik, 710 F.3d 818, 822 (8th Cir. 2013) (finding that a defendant's statements during an interview demonstrated voluntariness "[d]espite the presence of a team of officers on the property" when "only three of those officers participated in questioning" the defendant). During the August 19, 2022, interview, a reasonable person in Defendant's position would have felt free to end the interview; thus, Defendant was not in custody for the purposes of Miranda and law enforcement officers were not required to provide Defendant with a Miranda warning. Sanchez, 676 F.3d at 630–31. Furthermore, even assuming solely for the sake of argument that Defendant was in custody during the August 19, 2022, interview, his statements during that interview are not subject to suppression because SA Wambach advised Defendant of his rights pursuant to Miranda, and the totality of the circumstances demonstrates that, Defendant voluntarily, knowingly, and intelligently waive his rights.

case when a defendant can make a colorable argument that a self-incriminating statement was compelled despite the fact that the law enforcement authorities adhered to the dictates of Miranda." Williams v. Norris, 576 F.3d 850, 868 (8th Cir. 2009) (citing Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001)).

In regard to non-custodial statements to law enforcement, the Eighth Circuit Court of Appeals has established the following:

> A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination. We determine if a defendant's will has been overborne by examining the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure.

(Id.). A statement cannot, however, be rendered involuntary by the impaired capacity of the defendant alone; coercive police activity is a necessary requirement to finding a defendant's statement to be involuntary. Colorado v. Connelly, 479 U.S. 157, 164 (1986). The Government must demonstrate that a defendant's statements were voluntary by a preponderance of the evidence. United States v. Brave Heart, 397 F.3d 1035, 1040 (8th Cir. 2005).

In this case, the Government has met its burden of demonstrating by a preponderance of the evidence that Defendant's statements made during the August 19, 2022, interview were voluntarily made. The record now before the Court lacks any indication that Defendant's statements during the August 19, 2022, interview were extracted by threats, violence, or express or implied promises sufficient to overbear his will and critically impair his capacity for self-determination. Thus, for all the reasons discussed herein, Defendant's statements during the August 19, 2022, interview are not subject to suppression as involuntary.

Defendant argues that his statements were not voluntary because SA Wambach informed Defendant that the search warrant had been signed by a Judge, informed Defendant that the

search of the Subject Property had already uncovered "illegal items," and made "statements which can only be described as implied promises of leniency." (Def.'s Mem. [Docket No. 46] at 9–10). Defendant's Memorandum summarizes these statement as follows:

> Agent Wambach states that Mr. Danielson has an "opportunity." Agent Wambach suggests that Mr. Danielson should say that he wants to "come clean," [sic] and to "cooperate." Agent Wambach uses the word "benefit." He states that the prosecutors will be presented with his current statement, and [sic] that charging decisions will be based on it, and the prosecutors will know whether or not Mr. Danielson cooperated. Agent Wambach stated that now, in giving his statement, that "this is [his] chance." Agent Wambach posits the question, Does this make a difference? Agent Wambach implies that yes, it does make a difference, and that owning up to what is going on, giving a confession, giving a statement, [sic] shows that he is taking responsibility and cooperating, and that "it can be helpful."

(Id. at 10) (citations omitted). Defendant argues that these statements by SA Wambach demonstrate that SA Wambach provided promises of leniency in exchange for a confession.

The Court finds Defendant's argument here to be unpersuasive. As a threshold matter, arguments similar to Defendant's argument here, including arguments based on similar statements by an interviewing law enforcement officer, has been rejected by the Eighth Circuit Court of Appeals. Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001) (collecting cases); see e.g., United States v. Mariano, No. 11-cr-243, 2011 WL 7031113, at *8 (D. Minn. Nov. 22, 2011) (collecting cases), report and recommendation adopted, 2012 WL 116036 (D. Minn. Jan. 13, 2012); United States v. Dixon, No. 10-cr-5 (JNE/SRN), 2010 WL 1526541, at *6 (D. Minn. Mar. 8, 2010), report and recommendation adopted, 2010 WL 1526535 (D. Minn. Apr. 15, 2010); United States v. Fairbanks, No. 20-cr-259 (JRT/LIB), 2021 WL 5890848, at *5 (D. Minn. Aug. 13, 2021), report and recommendation adopted, 2021 WL 5049796 (D. Minn. Nov. 1, 2021).

"The statement to an accused that telling the truth 'would be better for him' does not constitute an implied or express promise of leniency for the purpose of rendering his confession involuntary." Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001); see Fairbanks, 2021 WL 5890848, at *5. Likewise, a law enforcement officer's statement to an accused that "his cooperation could be beneficial to him [is] not a promise and [does] not overbear his free will." Mariano, 2011 WL 7031113, at *8; United States v. Pierce, 152 F.3d 808, 810 (8th Cir. 1998) (finding statements voluntary after officers told an accused that it was "a proven fact that cooperation helps in the long run" and the accused could "get off pretty easy" by cooperating). Similarly, law enforcement advising an accused during an interview that the results of the interview, including information on whether the accused cooperated with law enforcement, would be made known to the appropriate prosecuting authority and that such information could affect the outcome of any case against the accused is insufficient inducement to render an incriminating statement involuntary. United States v. Little Bear, No. 8-cr-50067, 2009 WL 10679043, at *7, *20 (D.S.D. May 26, 2009), report and recommendation adopted, 2009 WL 10679044 (D.S.D. July 15, 2009); United States v. Childers, No. 20-cr-211, 2021 WL 5890662, at *17 (D. Minn. Sept. 27, 2021), report and recommendation adopted, 2021 WL 5505440 (D. Minn. Nov. 24, 2021).

In the present case, SA Wambach "may have attempted to create a climate which would be conducive to extracting inculpatory information (by summarizing the case against [Defendant] and by encouraging [Defendant] to make a statement)," but this does not render Defendant's statements involuntary. United States v. Jacks, 634 F.2d 390, 393 (8th Cir. 1980). There is simply no indication on the record now before the Court that Defendant's statements during the August 19, 2022, interview were the product of improper, coercive police conduct.

Importantly, even the use of "psychological pressure to facilitate a confession" is not a basis to suppression a confession unless said pressure and tactics overbore the defendant's will and capacity for self-determination. United States v. LeBrun, 363 F.3d 715, 724–26 (8th Cir. 2004). Although Defendant acknowledges this standard in his Memorandum, he fails to even allege or argue that his will and capacity for self-determination were overborn. (See Def. Mem. [Docket No. 46] at 22–23).

Furthermore, Defendant is an adult above the age of majority with no indication that he has any difficulty in speaking and understanding English, nor that his intelligence rendered him in any way incapable of understanding the circumstances on August 19, 2022. The record demonstrates that Defendant was an adult of at least average intelligence given his ability to respond appropriately to the questions presented at the August 19, 2022, interview with SA Wambach. Nothing in the record indicates that there were any signs that Defendant's intelligence was such that he was rendered particularly susceptible to undue influences or that he was rendered incapable of understanding his actions at the time of the August 19, 2022, interview. These considerations support finding Defendant's statements to be voluntary. United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005); United States v. Simpson, 44 F.4th 1093, 1098 (8th Cir. 2022), reh'g denied, 2022 WL 4295416 (8th Cir. Sept. 19, 2022), and cert. denied, 215 L. Ed. 2d 67, 143 S. Ct. 813 (2023).

Moreover, the record now before the Court also indicates that Defendant has at least some level of prior experience with the criminal justice system. This too weighs in favor of finding Defendant's statements during the August 19, 2022, interview to have been voluntarily made. United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005).

Upon consideration of the totality of the circumstance, including Defendant's own words and actions, the Court concludes that Defendant's statements made during the August 19, 2022, interview were voluntarily made.

Therefore, to the extent Defendant's Motion, [Docket No. 28], seeks an Order of this Court suppressing his statements made during the interview with SA Wambach on August 19, 2022, the undersigned recommends that Defendant's Motion to Suppress, [Docket No. 28], be **DENIED**.

**VII.    Defendant's Motion to Suppress Evidence. [Docket No. 28].**

Defendant also seeks an Order of this Court suppressing any evidence flowing from the August 16, 2022, Search Warrant which authorized law enforcement officers to search the Subject Property to seize the following items: firearms, including firearm parts, accessories, and tools used to manufacturer firearms; documents demonstrating the sale or manufacturing of firearms, firearm parts, and firearm accessories; documents demonstrating the constructive possession of the contraband listed in the Search Warrant; cellular telephones and computers associated with Defendant; improvised explosive devices and incendiary devices, including parts, components, and tools used to manufacture such devices; and documentation related to the manufacture, use, or disposition of such devices. (Gov't Ex. 2). Defendant argues that any evidence seized pursuant to the August 16, 2022, Search Warrant should be suppressed because the affidavit SA Wambach submitted in support of the August 16, 2022, lacks probable cause.

**A.  Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

The Eighth Circuit has held that "[a]n affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." United States v. Mutschelknaus, 592 F.3d 826, 828 (8th Cir. 2010) (internal quotation marks and citation omitted). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Courts use a "totality of the circumstances test . . . to determine whether probable cause exists." United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 9-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (quoting United States v.

Solomon, 432 F.3d 824, 827 (8th Cir. 2005)) (alterations in Wiley). In addition, the issuing

court's "determination of probable cause should be paid great deference by reviewing courts."

Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty

of a reviewing court is simply to ensure that the [issuing court] had a 'substantial basis for . . .

conclud[ing]' that probable cause existed." Id. at 238–39 (quoting Jones v. United States, 362

U.S. 257, 271 (1960)).

**B. Analysis**

As observed above, Defendant argues that the affidavit SA Wambach submitted in

support of the August 16, 2022, Search Warrant lacked a reasonable basis upon which to find

that probable cause existed to support the issuance of the August 16, 2022, Search Warrant.

(Def.'s Mem. [Docket No. 46] at 23–35). Specifically, Defendant argues that the affidavit lacked

probable cause because, other than "innocent" information, law enforcement officers failed to

corroborate any information received from CI 1 and because the information provided in the

affidavit was too remote in time to the date the affidavit was submitted. (Id. at 34–35). The Court

finds these arguments to be unpersuasive.

The Court first considers whether the information from the confidential informants, if

reliable, along with the other information contained in SA Wambach's affidavit, would have

provided Judge Thorson with a substantial basis upon which to conclude that probable cause

existed to issue the August 16, 2022, Search Warrant.

SA Wambach's affidavit provided that on January 13, 2022, CI 1 informed SA Wambach

that Defendant manufactured firearms at the Subject Property, converted firearms to "fully

automatic firearms," sold the privately made firearms to others, and exchanged the privately

manufactured firearms for methamphetamine. The affidavit further provided that CI 1 had

previously observed "small CO2 cannister bombs" or "cricket bombs" at the Subject Property. Upon receiving this information, SA Wambach determined that Defendant did not have any National Firearms Act items registered to him, and SA Wambach reviewed records to verify that Defendant's driver's license indicated his address was the Subject Property as CI 1 had informed SA Wambach.

The affidavit further provided that on March 16, 2022, and May 12, 2022, CI 1—under the supervision of SA Wambach and other law enforcement officers—participated in two separate controlled purchases during which CI 1 purchased a total of four silencer devices. SA Wambach attested that he inspected each of the four silencer devices, and he found that each silencer device lacked markings indicating manufacturer, model, or serial information which would be required if the devices had been lawfully registered under the National Firearms Registration and Transfer Record. CI 1 further reported observing several more "cricket" bombs during the March 16, 2022, controlled purchase. On August 11, 2022, CI 1 also observed the following materials at the Subject Property: "metal cylindrical tubes (consistent with silencer device parts)"; items which "appeared to be multiple completed silencer devices; a .45 caliber pistol and a .308 caliber rifle, both with silencer devices attached"; "a .223/5.56 mm multi-caliber barreled rifle modified to function as a fully automatic firearm"; a "bucket containing small empty metal cylinders (consistent with Co2 [sic] tubes used for paintball or air guns) adjacent to containers of smokeless gun powder and measuring devices for powder"; and "fusing cord hanging on a wall nearby."

In his affidavit, SA Wambach also attested that based on the information collected through the investigation he believed probable cause existed to demonstrate that Defendant illegally possessed a firearm as an "[u]nlawful user or person addicted to a controlled substance";

was in possession of a firearm not registered to him in the National Firearms Registration and Transfer Record; and was manufacturing firearms not registered in the National Firearms Registration and Transfer Record.

It is well established that "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998) (citations omitted). In additional to the information provided by CI 1, including the information and evidence obtained during the two controlled purchases, SA Wambach also attested that each of the four silencers purchased during the two controlled purchases from Defendant lacked markings indicating manufacturer, model, or serial number information which SA Wambach further attested, based on his training and experience, was required for the silencer devices to be lawfully registered under the National Firearms Registration and Transfer Act.

Accordingly, upon reviewing the totality of the circumstances, the Court concludes that, if the representations of CI 1 were reliable, SA Wambach's affidavit in support of the application for the August 16, 2022, Search Warrant would have provided Judge Thorson with a substantial basis on which to conclude that probable cause existed to justify issuance of the August 16, 2022, Search Warrant.

Defendant, however, contends that CI 1 was not reliable. Therefore, according to Defendant, the information obtained from CI 1 cannot be the basis upon which probable cause exists.

"The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). "The reliability of a confidential informant can be established if the person has a

history of providing law enforcement officials with truthful information." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998) (citations omitted). Such reliability can also be established through law enforcement's corroboration of information provided by a confidential informant. United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).

"If [some] information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993); see United States v. Leppert, 408 F.3d 1039, 1041 (8th Cir. 2005); United States v. Evans, 4 F.4th 633, 637 (8th Cir. 2021). "Even the corroboration of minor, innocent details can suffice to establish probable cause." United States v. Buchanan, 574 F.3d 554, 562 (8th Cir. 2009) (quoting United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001)); see United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998).

In his affidavit, SA Wambach specifically attested that certain information provided by CI 1 was verified by law enforcement. For example, after CI 1 provided SA Wambach with a physical description of the vehicle Defendant had been driving, SA Wambach verified—through a search of the relevant database—that a vehicle matching the description was registered to Defendant's father at the Subject Property. SA Wambach also verified that Defendant's driver's license listed the Subject Property as his address as indicated by CI 1. "While these may be innocent details, they sufficiently corroborate the" information provide by CI 1 "for the purposes of probable cause." United States v. Edwards, No. 21-cr-255 (NEB/ECW), 2022 WL 4112436, at *7 (D. Minn. June 21, 2022), report and recommendation adopted, 2022 WL 3536135 (D. Minn. Aug. 18, 2022); United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001). The reliability of the information obtained from CI 1 is further bolstered by the fact that the majority of SA

Wambach's interactions with CI 1 were in-person communications during which SA Wambach could assess CI 1's credibility. United States v. Buchanan, 574 F.3d 554, 562 (8th Cir. 2009) ("The circumstances of personal questioning may also enhance reliability and credibility.") (citing United States v. Robertson, 39 F.3d 891, 893 (8th Cir. 1994) (stating the reliability of a tip is enhanced when an agent meets personally with the informant to assess his credibility)).[17]

Moreover, SA Wambach's affidavit further provides that law enforcement officers, including SA Wambach, observed the two controlled purchases during which CI 1 purchased a total of four silencer devices from Defendant. During these same controlled purchases, law enforcement officers heard Defendant and CI 1 discussing Defendant's sale of firearms and silencer devices, as well as, Defendant's manufacturing of "fully automatic firearms" for himself and others. These observations corroborate the information provided by CI 1. See, e.g., United States v. Washington, No. 21-cr-126 (ADM/ECW), 2022 WL 538878, at *12 (D. Minn. Feb. 23, 2022), report and recommendation adopted, 2022 WL 1658175 (D. Minn. May 25, 2022); United States v. Flemino, No. 15-cr-170 (MJD/SER), 2015 WL 6739580, at *7 (D. Minn. Sept. 16, 2015), report and recommendation adopted, 2015 WL 6756107 (D. Minn. Nov. 4, 2015).

In the present case, the record reflects that SA Wambach's affidavit submitted in support of the August 16, 2022, Search Warrant demonstrated that CI 1 presented the majority of the information to SA Wambach through in-person conversations and that portions of the information provided by CI 1 had been independently corroborated by law enforcement through

---

[17] Defendant takes umbrage with the fact that the information provide by CI 1 on August 11, 2022, was not independently corroborated by law enforcement. As already discuss, however, law enforcement is not required to corroborate every piece of information provided by a confidential informant. See, e.g., United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993); United States v. Leppert, 408 F.3d 1039, 1041 (8th Cir. 2005); United States v. Evans, 4 F.4th 633, 637 (8th Cir. 2021). The corroboration of other information previously provided by CI 1 in the investigation of Defendant allows the permissible inference that CI 1 is reliable and that therefore other information CI 1 provided is also reliable. Moreover, the information provided by CI 1 on August 11, 2022, including CI 1's observation of silencer devices at the Subject Property, is consistent with CI 1's reports of his previous observations; the evidence obtained through the two controlled purchases; and law enforcement's observations during the controlled purchases.

various mean, including being corroborated by evidence obtained through the two controlled purchases. The totality of the circumstances demonstrates that this information adequately establishes that CI 1 was reliable for the purposes of determining the existence of probable cause.

Defendant also argues that SA Wambach's affidavit in support of August 16, 2022, Search Warrant lacked a substantial basis upon which to find probable cause existed to support the issuance of the August 16, 2022, Search Warrant because the affidavit provided only stale information with the most recent controlled purchase being three months prior to the August 19, 2022, search of the Subject Property. The Court finds this argument to be unpersuasive.

"It is axiomatic that probable cause must exist at the time of the search and not merely at some time earlier." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005) (collecting cases). Even information obtained from reliable, confidential informants must be sufficiently close in time to the issuance of the warrant and subsequent search so that probable cause can be said to exist at the time of the search itself. See, e.g., United States v. Washington, No. 21-cr-126 (ADM/ECW), 2022 WL 538878, at *13 (D. Minn. Feb. 23, 2022), report and recommendation adopted, 2022 WL 1658175 (D. Minn. May 25, 2022); United States v. Abari, No. 19-cr-103 (MJD/ECW), 2019 WL 10886798, at *3 n.3 (D. Minn. Oct. 1, 2019), report and recommendation adopted, 2020 WL 4727436 (D. Minn. Aug. 14, 2020). Thus, a lapse in time, between the observations provided in an affidavit in support of a search warrant and the issuance and execution of said search warrant, may render probable cause fatally stale. Id.

"While a lapse of time between the observations of a witness and the issuance of a search warrant may render probable cause fatally stale, '[t]here is no bright-line test for determining when information is stale.'" United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir. 2007) (alteration in Gettel) (quoting United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995)). "A

warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." United States v. Ortiz-Cervantes, 868 F.3d 695, 700 (8th Cir. 2017) (cleaned up); see United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007).

"The passage of time is not," however, "necessarily the controlling factor in determining staleness, as other factors, such as the nature of the criminal activity involved and the kind of property subject to the search, must be considered." Gettel, 474 F.3d at 1086 (cleaned up). A Court may not "simply count[ ] the number of days between the occurrence of the facts supplied and the issuance of the affidavit," but it must consider any passage of time "in the context of a specific case and the nature of the crime under investigation." United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995) (quoting Koelling, 992 F.2d at 822). Moreover, "where recent information corroborates otherwise stale information, probable cause may be found." United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995) (quoting United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990)). Additionally, where an affidavit alleges an "ongoing continuous criminal enterprise, the passage of time between the receipt of information and the search becomes less critical in assessing probable cause." United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992); see United States v. Smith, 21 F.4th 510, 515 (8th Cir. 2021).

In the present case, the Court finds that the information attested to in SA Wambach's affidavit in support of the August 16, 2022, Search Warrant was not impermissibly stale at the time the August 16, 2022, Search Warrant was issued or executed. First, the information in the affidavit is not stale because said information related to the investigation of an ongoing, continuous criminal enterprise (the manufacture, possession, and sale of contraband firearms,

firearm accessories, and explosive devices). SA Wambach attested to the details of two separate controlled purchases, and the affidavit also provided that CI 1 had observed similar contraband at the Subject Property on two other occasions.

Moreover, even assuming solely for the sake of argument that the information from the controlled purchases had begun to stale, CI 1 provided additional information five days prior to the issuance of the August 16, 2022, Search Warrant which corroborated the earlier information from CI 1, including the information and evidence obtained during the controlled purchases. The newer, corroborating information would have cured any hypothetical staleness in the other information provided in SA Wambach's affidavit in support of the August 16, 2022, Search Warrant.[18]

In summary, the Court finds that SA Wambach's affidavit in support of the August 16, 2022, Search Warrant provided a sufficient basis upon which Judge Thorson could reasonably conclude that the execution of the August 16, 2022, Search Warrant at the Subject Property would result in a fair probability that contraband or evidence of criminal activity would be found. Thus, SA Wambach's affidavit in support of the August 16, 2022, Search Warrant provided a sufficient basis upon which Judge Thorson could reasonably conclude that probable cause existed to support the issuance of the August 16, 2022, Search Warrant. The information contained in SA Wambach's affidavit was not stale. SA Wambach's affidavit also demonstrates that CI 1 is sufficiently reliable for the purposes of making a probable cause determination.

In addition, assuming solely for the sake of argument that the affidavit of SA Wambach was not sufficient to establish probable cause, the Court concludes that officers relied in good

---

[18] In asserting his argument that the information in SA Wambach's affidavit is stale, Defendant asserts that the Court cannot consider the information provided by CI 1 in August 2022, because the information from August 2022, was neither verified or corroborates, and thus, according to Defendant, it is not reliable. For all the reasons discussed above related to the reliability of CI 1, the Court finds Defendant's argument here to be unpersuasive.

faith on the probable cause determination by Judge Thorson when executing the August 16, 2022, Search Warrant.

Although evidence obtained as a result of the execution of a warrant unsupported by probable cause is generally inadmissible, Mapp v. Ohio, 367 U.S. 643 (1961), there is an exception "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." Davis v. United States, 564 U.S. 229, 238–39 (2011) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). There are four circumstances in which the good-faith exception does not apply:

> (1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."

United States v. Marion, 238 F.3d 965, 969 (2001).

The record presently before the Court shows that law enforcement's good-faith reliance on the warrant issued authorizing the search of the Subject Property militates against suppressing the evidence obtained during the execution of the August 16, 2022, Search Warrant. In his affidavit in support of his application for a search warrant, SA Wambach presented sufficient facts indicating that CI 1 was sufficiently reliable for the purposes of determining probable cause; that Defendant manufactured, possessed, and sold prohibited firearms or firearms accessories, including silencer devices; that Defendant manufactured and possessed certain explosive devices; and that the execution of the August 16, 2022, Search Warrant would lead to the discovery of evidence of a crime.

Accordingly, the affidavit in support of the application for the August 16, 2022, Search Warrant was not so lacking in indicia of probable cause as to render law enforcement's belief in its existence entirely unreasonable nor did SA Wambach's affidavit render the warrant so facially deficient that the executing officers could not have reasonably presumed the August 16, 2022, Search Warrant to be valid. Likewise, there is simply no evidence on the record now before the Court that Judge Thorson "wholly abandoned [her] judicial role."

Therefore, to the extent Defendant's Motion to Suppress seeks to suppress evidence flowing from the execution of August 16, 2022, Search Warrant, the undersigned recommends that Defendant's Motion to Suppress, [Docket No. 28], be **DENIED**.[19]

## VIII.   Conclusion

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.  Defendant's Request for Discovery Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, [Docket No. 20], is **GRANTED in part** and **DENIED in part**, as set forth herein;

2.  Defendant's "Brady Motion," [Docket No. 21], is **GRANTED in part** and **DENIED in part**, as set forth herein;

3.  Defendant's Motion to Compel Production of Giglio Material, [Docket No. 23], is **GRANTED in part** and **DENIED in part**, as set forth herein; and

4.  Defendant's Request for Pretrial Notice of Intent to Introduce Other Crimes Evidence, [Docket No. 25], is **GRANTED in part** and **DENIED in part**, as set forth herein.

---

[19] Defendant also argues that if the Court determines that the August 16, 2022, Search Warrant was not supported by probable cause, then the Court should suppress his August 19, 2022, statements to SA Wambach as fruits of the poisonous tree. (Def.'s Mem. [Docket No. 46] at 36–38). The Court need not address this argument because the Court has already concluded that SA Wambach's affidavit in support of the August 16, 2022, Search Warrant provided a sufficient basis to find probable cause to support the issuance of the August 16, 2022, Search Warrant.

Further, for reasons discussed herein, the Court recommends that Defendant's Motion to Suppress,[20] [Docket No. 28], be **DENIED**.

Dated: June 2, 2023

<u>s/Leo I. Brisbois</u>
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.

---

[20] <u>See</u> fn. 12, supra.