UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

                    Plaintiff,

       v.                                    **ORDER ADOPTING REPOR**T
                                             **AND RECOMMENDATION**
                                             Crim. No. 22-00299 (MJD/LIB)

Ethan Mark Danielson,

                    Defendant.

_____

Lauren Olivia Roso, Assistant United States Attorney, Counsel for Plaintiff.

Lynne A. Torgerson, Torgerson Law Office, Counsel for Defendant.

_____

       This matter is before the Court on the Report and Recommendation by

United States Magistrate Judge Leo I. Brisbois dated June 2, 2023.  (Doc. 49.)

Judge Brisbois recommends the Court deny Defendant's Motion to Suppress.

(Doc. 28.)  Defendant filed objections to the Report and Recommendation ("the

R&R") (Doc. 50) and a memorandum in support of the motion that far exceeded

the word limit allowed by D. Minn. LR 72.2(c)(3) (Doc. 50-1).  Defendant

simultaneously filed a motion to exceed the word limits in his memorandum.

(Doc. 51.)  The Court denied Defendant's motion to file the noncompliant

memorandum but accepted Defendant's objections to the R&R.  (Docs. 53, 55.)

1

The Court notes that not only is Defendant not prejudiced by being required to follow the Local Rules but that he is also not prejudiced because his memorandum was almost entirely a direct quote of his previous briefing filed in support of his motion to suppress.  The Government filed a response to Defendant's objections asking the Court to review the R&R under a clear error standard of review.  (Doc. 56.)

## I.   Standard of Review

In pertinent part, Judge Brisbois recommends that the Court deny Defendant's Motion to Suppress, which the Court notes requests dismissal of both counts in the Indictment and suppression of statements and evidence.  For ease of discussion, the Court refers to each of these "requests" as motions, even though there is only one motion before the Court.

Defendant objects not only to Judge Brisbois' conclusions on these issues, but also to at least some of the "Background and Statement of Facts."  (Doc. 50 at 1.)  However, Defendant's objections do not identify what specific parts of Judge Brisbois' seven-page discussion of the background and facts of this case, four-page analysis of Defendant's motion to dismiss the Indictment, or 16-and-a-half-

page discussion of Defendant's motion to dismiss statements and evidence to

which he objects.

> When a party properly objects to an R&R, the Court[] reviews those portions of the R&R to which the party objects de novo. See 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); D. Minn. L.R. 72.2. These objections, however, generally must specifically identify the parts of the R&R to which the party objects and give a basis for those objections. United States v. Pearson, No. 15–CR-117 (JRT/TNL), 2015 WL 6445439, at *1 (D. Minn. Oct. 23, 2015.) The Court reviews objections that simply rehash arguments made to the Magistrate Judge for clear error. Id. This is certainly the case in the civil context. Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 72 advisory committee's note, subd. (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). But it is less clear in the criminal context. . . . [T]he Eighth Circuit has not considered the issue[.] . . .

United States v. Chopra, No. 19-CR-305 (NEB/BRT), 2021 WL 347415, at *1 (D.

Minn. Feb. 2, 2021).

The Courts in this District that have addressed this issue are divided as to

whether this rule should be applied in the criminal context. See Pearson, 2015

WL 6445439, at *2 (applying clear error standard of review when objections failed

to specify particular errors in the R&R); United States v. Heying, No. CRIM 14-30

1 JRT/SER, 2014 WL 5286155, at *3 (D. Minn. Oct. 15, 2014) (same). But see

Chopra, 2021 WL 347415, at *1 (holding that "[a]s the Eighth Circuit has not

considered the issue, the Court will err on the side of caution and review the

R&R de novo" and reasoning that, "under either standard, [the defendant's] motion fails") (citation omitted).

Here, because the Eighth Circuit has not considered the issue and because the outcome is the same under either standard of review, the Court finds the reasoning in Chopra persuasive and will review the R&R de novo.  Id.

## II.      BACKGROUND AND FACTS

The facts in the R&R "are derived from the testimony of Special Agent Jason Wambach at the March 17, 2023 Motions Hearing , as well as the parties' exhibits admitted in the present case."  (Doc. 49 (R&R) at 2 n.1.)

After conducting a de novo review, the Court adopts the facts contained in the R&R.

Briefly, Defendant's motions are based on an investigation conducted by the Bureau of Alcohol Firearms and Tobacco that began on January 13, 2022 when Special Agent Jason Wambach ("SA Wambach") interviewed a confidential informant ("CI 1") at the Becker County Jail who told SA Wambach that Defendant built firearms in his father's shop, which was located at Defendant's father's residence where Defendant lived with his parents (collectively with the adjoining property, "the subject property").  CI 1 also stated that Defendant

converted some firearms to fully-automatic firearms, sold the privately-made firearms to others, and exchanged the firearms for methamphetamine. In addition, CI 1 stated that Defendant buried the firearms in large plastic containers, he had seen one of these containers on the subject property before it was buried, and that he had observed "small CO2 cannister bombs" or "cricket bombs" at the subject property. SA Wambach then determined that Defendant lived at the subject property and did not have any National Firearms Act items registered to him at that time.

Subsequent to these interviews, SA Wambach had CI 1 make two controlled purchases of "firearm related evidence" from Defendant. Both purchases were monitored with both audio and visual equipment that "allowed law enforcement to monitor conversations in the vicinity of CI 1." (R&R at 3, 4.)

On March 16, 2002, CI 1 walked into a shop building on the subject property. CI 1 purchased a silencer device for $600, which Defendant modified before completing the transaction so that the silencer could not be dismantled to learn how it was manufactured. During this transaction, Defendant and CI 1 "discussed fully automatic weapons which Defendant manufactured using forced reset triggers" and law enforcement observed Defendant smoking what

law enforcement believed was methamphetamine.  (Id. at 3.)  While CI 1 was on the subject property for the controlled purchase, he observed "several small 'cricket bombs' near a table."  (Id. at 4.)

On March 12, 2022, CI 1 made the second controlled purchase from Defendant at the subject property.  This time, CI 1 purchased three silencer devices for $400 per unit and Defendant gave CI 1 thirteen .22 caliber rounds of live ammunition free of charge.  None of the silencer devices were marked with manufacturer, model, or serial information.  "Defendant and CI 1 discussed sub-sonic ammunition, and on three occasions, they exited the building to discharge firearms with and without a silencing device to hear the difference."  (Id.)

On August 11, 2022, SA Wambach spoke to CI 1 on the telephone and CI 1 informed SA Wambach that he had spoken with Defendant and observed him driving a 2022 white Chevrolet Silverado with a Minnesota Dealer plate.  He also told SA Wambach that he had observed the following materials in the shop building on the subject property that day:

> "metal cylindrical tubes (consistent with silencer device parts)"; items which "appeared to be multiple completed silencer devices; a .45 caliber pistol and a .308 caliber rifle, both with silencer devices attached to them"; and "a .223/5.56 mm multi-caliber barreled rifle modified to function as a fully automatic firearm."  CI 1 also observed a "bucket containing small empty metal cylinders

6

(consistent with Co2 [sic] tubes used for paintball or air guns)
adjacent to containers of smokeless gun powder and measuring
devices for powder" with "fusing cord hanging on a wall nearby."

(Id. at 5 (internal citations omitted) ([sic] in original).)  SA Wambach discovered

the vehicle was registered to Defendant's father and that Defendant's father did

not possess a Federal Firearm License or Federal Explosive License to sell or

manufacture firearms or explosives.  (Id. n.3.)

On August 16, 2022, SA Wambach applied for, and was issued, a search

warrant for the subject property.  The warrant was executed on the morning of

August 19, 2022 by approximately 20 law enforcement officers.  While other

officers were searching, SA Wambach and an investigator from the Becker

County Sheriff's Office interviewed Defendant.  They sat at a patio table outside

the main residence.  The conversation lasted approximately 30 minutes and was

audio recorded.  (Gov. Ex. 1.)

After obtaining identifying information from Defendant, SA Wambach

informed Defendant that he was free to leave at any time, that although he might

not feel like he was free to leave with so many officers on the property, he was,

indeed, free to leave.  SA Wambach advised Defendant of his Miranda rights and

told him that although he was Mirandizing him, Defendant was not being

arrested.  Defendant acknowledged that he understood his rights, knew he could

7

stop talking at any time if he chose to speak to law enforcement, and that he was not being arrested.  Defendant "responded in the affirmative" that with these rights in mind, he was willing to speak to law enforcement.  (R&R at 7.)

SA Wambach informed Defendant that they were searching pursuant to a search warrant, that the search had already yielded "'a number of firearms . . . attached to what appears to be silencer devices'; items 'related to the manufacture of firearms and silencers'; and 'drug evidence,'" even though they were not specifically looking for drug evidence" and know Defendant used drugs.  (Id. (ellipses in original).)  SA Wambach then made the following statement:

> The other, I wanna tell you that because this is an opportunity for you to right now say "Okay I wanna come clean. I wanna cooperate," and the benefit of that is we don't make decisions on charging and who's going to get charged.  Those are made by attorneys, whether its federal prosecutors or state prosecutors. But I will tell you that this interview, this discussion is going to get to them.  And I will do a report on it, so they'll know initially whether you wanted to cooperate.  And cooperation at this point, starting basic is where there's illegal items on the property, not just in the shop, but on the other parts of the property—if there's guns or other items that are hidden, buried, hidden under vehicles or anything like that, we've got a K9 dog that sniffs firearms here, ok.  We've got metal detectors, so we're going to search those areas regardless, but this is your chance where you can say, "Okay, I wanna own up to whatever's going on, I'm willing to assist with it."  Does that make a difference?  Well, I can tell you that not only does it make our

investigation go smoother, but it does show that you're taking
responsibility and cooperating.  Prosecutors made aware of that,
they want to know that stuff, it can be helpful.  There's no guarantee
with it, right.  And I can, I will tell you that if you do decide to talk
with us and admit where some more evidence might be, I'm not
going to put handcuffs on you and take you to jail, because you
admitted to some illegal doing.  Okay. I could do that right now if I
wanted.  We've already found stuff.  I didn't want to do that.  So,
our plan regardless right now—you know unless you tell me where
there's a dead body buried or something obviously aside from
something really extreme—regardless of what you say, when we
leave, you're staying at home.  That make sense?

(Id. at 7-8.)  Defendant said it made sense.  SA Wambach asked Defendant again

if he was willing to speak with law enforcement, and Defendant answered, "Yep.

Yeah.  I take responsibility for it."  (Id.)  SA Wambach then began discussing the

circumstances of the instant case including who owned the items that had

already been found during the search, Defendant's manufacturing of firearms

and silencers, and the frequency of Defendant's methamphetamine use.

Approximately 21 minutes into the interview, Defendant's mother asked

whether Defendant had "to answer all this stuff without a lawyer," to which SA

Wambach began to respond when Defendant said, "No, I don't Mom."  (Id.)

Defendant's mother stated that Defendant should not continue the interview

without a lawyer because law enforcement were "just going to use stuff against

you more than they already are," Defendant responded, "Yeah, I know."  (Id.)

SA Wambach again reiterated that Defendant could stop the interview at any time.  However, Defendant and SA Wambach continued to discuss the circumstances of the instant case and SA Wambach concluded the interview within a few minutes.  Near the end of the interview, SA Wambach told Defendant that he could demonstrate cooperation by giving him the swipe code to his cell phone so law enforcement would not need to obtain a warrant to access the contents of the phone and that SA Wambach would mention this cooperation in his report.  (Gov. Ex. 1 at 24:14-25:14.)

Defendant is charged with being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8) and possession of an unregistered short-barreled rifle in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871.  (Indict.)  In pertinent part, Defendant has moved to dismiss the Indictment, suppress the statements he made during his August 19, 2022 Mirandized interview with law enforcement, and suppress items seized during the August 19, 2022 search of the subject property.  (Doc. 28.)

## III.   DEFENDANT'S OBJECTIONS

### A.   Defendant's Objection to Background and Facts

Defendant objects to unidentified statements contained in the Background and Statements of Fact in the R&R.

As discussed above, the Court's <u>de novo</u> review of the Facts section of the R&R concludes the facts are supported by the record.  Accordingly, Defendant's objections to the Background and Facts contained in the R&R, to the extent there are any, are overruled.

**B.   Defendant's Objection to Recommendation to Deny his Motion to Dismiss Indictment**

Defendant objects to Judge Brisbois' recommendation to deny his motion to dismiss both counts of the Indictment.  Again, his objections are non-specific.

Defendant originally argued that both counts in the Indictment should be dismissed because the United States Supreme Court's decision in <u>New York State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 142 S. Ct. 2111 (2022) required that the Court declare both statutes under which he was indicted unconstitutional as violative of the Second Amendment because neither prohibitions on possession of firearms by unlawful users of controlled substances nor prohibitions declaring possession of unregistered firearms existed at the time this country was founded. (R&R at 14 (citing Def. Mem. in Supp. of Mot. to Suppress (Doc. 29) at 12, 21-22

(citing <u>United States v. Harrison</u>, No. 22-cr-328 (PRW), 2023 WL 1771138 (W.D.

Okla. Feb. 3, 2023)).)

The Court's <u>de novo</u> review of the issue comes to the same conclusion as

Judge Brisbois:

> Both Defendant's interpretation of <u>Bruen</u> and the rationale proffered
> in <u>Harrison</u> largely ignore material portions of the Court's reasoning
> in <u>Bruen</u>, including its limitation to law-abiding citizens.
> Defendant's interpretation of <u>Bruen</u> also largely ignores the
> Supreme Court's reasoning in [<u>District of Columbia v. Heller</u>, 554
> U.S. 570 (2008)] despite the fact that the <u>Bruen</u> Court repeatedly
> provided that <u>Bruen</u> was merely an extension of the rationale in
> <u>Heller</u> and specifically indicated that <u>Bruen</u> did not alter <u>Heller</u>.

(<u>Id.</u> at 14-15.)  This ruling is in concert with the "overwhelming majority of

Courts to consider the exact argument Defendant raises here."  (<u>Id.</u> at 15 (citing

cases from 11 different district courts, 3 of which are in the Eighth Circuit: <u>United</u>

<u>States v. Randall</u>, No. 4:22-cr-99, 2023 WL 3171609, at *3–4 (S.D. Iowa Feb. 14,

2023); <u>United States v. Parker</u>, No. 22-cr-4072, 2023 WL 3596453 (N.D. Iowa Apr.

25, 2023); <u>United States v. Royce</u>, No. 1:22-cr-130, 2023 WL 2163677, at *1 (D.N.D.

Feb. 22, 2023)).)

Similarly, even assuming Defendant's conduct is protected by the Second

Amendment, which it is not, there is a history in this country of "regulating

firearm possession by individuals using intoxicating substances which is

analogous to § 922(g)(3)."  United States v. Posey, No. 2:22-CR-83 JD, 2023 WL 1869095, at *9 (N.D. Ind. Feb. 9, 2023).  And, as Judge Brisbois pointed out, § 922(g)(3) is "analogous to historical regulations preventing dangerous persons, such as felons and the mentally ill, from possessing firearms."  (R&R at 16 (quoting Posey, 2023 WL 1869095, at *9).)  Finally, although Bruen changed some Second Amendment rights, it did not change the constitutionality of prohibitions on "dangerous and unusual weapons," such as those prohibited under § 5861(d). United States v. Sredl, No. 3:22-CR-71 RLM-MGG, 2023 WL 3597715, at *3 (N.D. Ind. May 23, 2023) (citing Heller, 554 U.S. at 626–627).  "Possession of dangerous and unusual weapons was excluded from the Second Amendment right before [Bruen], and their exclusion continues after [Bruen]."  Id.

Defendant's objections are overruled.

### B.    Defendant's Objection to Recommendation to Deny his Motion to Suppress Statements

Defendant also raises a nonspecific objection "in connection with" Judge Brisbois' Recommendation to deny Defendant's Motion to Suppress Statements he made during his Mirandized interview with SA Wambach.  In his original motion to suppress, Defendant argued that his statements were the involuntary

"product of unconstitutional implied promises of leniency."  (R&R at 17 (citations omitted).)

A statement is involuntary when it is extracted by threats, violence, or promises (express or implied) sufficient to overbear the defendant's will and critically impair his capacity for self-determination.  United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).  Courts judge the voluntariness of a statement by the totality of the circumstances, id., and they consider factors such as "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition."  Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004).

The Court's de novo review convinces the Court that the statements Defendant made during the interview were voluntary.  The interview took place on Defendant's own patio; only two officers were present and only one questioned Defendant; the tone of the interview was conversational, not combative; Defendant was reminded more than once that the interview could be terminated at any time; and Defendant was not isolated—in fact, Defendant's mother interrupted the interview to ask if Defendant had to answer questions without a lawyer, Defendant answered that he did not have to answer the

questions, and SA Wambach reiterated that it was Defendant's choice whether to continue the interview. (Gov. Ex. 1 at 21:21-21:50). There is no indication that Defendant was not of at least average intelligence, that he did not understand the English language, or that he was ill or impaired in any way at the time of the interview.

In addition, the interview lasted only 30 minutes, Defendant was told he would not be arrested at the end of the interview (unless he told officers there was a body buried on the property), and, indeed, was not arrested at the end of the interview. Most importantly, although SA Wambach told Defendant he would tell prosecutors about any cooperation Defendant furnished and those prosecutors, not law enforcement, make charging decisions (id. at 5:14-6:50, 24:14-24:15), this statement did not change Defendant's voluntary statements into involuntary ones. United States v. Mendoza, 85 F.3d 1347, 1350–51 (8th Cir. 1996).

The entire interview lacked any sign of coercion. Accordingly, Defendant's objection is overruled.

**C.     Defendant's Objections to Recommendation to Deny his Motion to Suppress Evidence**

Defendant's final nonspecific objection is "in connection with" Judge Brisbois' recommendation to deny Defendant's Motion to Suppress Evidence obtained during the August 19, 2022 search of the subject property pursuant to the August 16, 2022 search warrant.  Defendant originally argued that the affidavit SA Wambach submitted in support of the warrant application lacked probable cause.  (R&R at 22.)  Defendant argued that the affidavit lacked probable cause because (1) law enforcement only corroborated innocent information received from CI 1 and (2) because information contained in the affidavit was too remote in time from the date the affidavit and warrant application were submitted.  (Id. at 24.)

### 1.    Probable Cause

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. Amend. IV.  "A search warrant is valid under the Fourth Amendment if it is supported by probable cause.  Probable cause exists when a 'practical, common-sense' inquiry that considers the totality of the circumstance set forth in the information before the issuing judge yields a

'fair probability that contraband or evidence of a crime will be found in a particular place.'" <u>United States v. Stevens</u>, 530 F.3d 714, 718 (8th Cir. 2008) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 218 (1983)). "An issuing judge's 'determination of probable cause should be paid great deference by reviewing courts' and should be upheld if the judgment had a 'substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing.'" <u>Id.</u> (quoting <u>Gates</u>, 462 U.S. at 236).

The Court's <u>de novo</u> review shows that the warrant was supported by probable cause. Contrary to Defendant's argument, not only does the warrant establish probable cause, the affidavit in support of the warrant shows that law enforcement corroborated more than innocent facts related to CI 1. Due to the audio and visual surveillance CI 1 undertook when he conducted his controlled purchases from Defendant, law enforcement, including SA Wambach,

> observed the two controlled purchases during which CI 1 purchased a total of four silencer devices from Defendant. During these same controlled purchases, law enforcement officers heard Defendant and CI 1 discussing Defendant's sale of firearms and silencer devices, as well as, Defendant's manufacturing of "fully automatic firearms" for himself and others. These observations corroborate the information provided by CI 1.

(R&R at 28.) In short, law enforcement did more than corroborate information the CI gave them after-the-fact, law enforcement was practically in the workshop

and on the subject property with CI 1 <u>during</u> the encounters.  When CI 1 turned

his purchases over to law enforcement, SA Wambach found that each silencer

device lacked markings indicating "manufacturer, model, or serial information,

which would be required if the devices had been lawfully registered under the

National Firearms Registration and Transfer Record."  (Aff. in Supp. of Appl. for

Search Warrant at 14 ¶ 15.)  SA Wambach had face-to-face meetings with CI 1,

which allowed SA Wambach to assess CI 1's credibility.  <u>See</u> <u>United States v.</u>

<u>Buchanan</u>, 574 F.3d 554, 562 (8th Cir. 2009) (citing <u>United States v. Robertson</u>, 39

F.3d 891, 893 (8th Cir. 1994) (stating the reliability of a tip is enhanced when an

agent meets personally with the informant to assess his credibility).

　　All of this information, in turn, was consistent with CI 1's notification to

SA Wambach on August 11, 2022 that he observed metal cylindrical tubes

consistent with silencer device parts adjacent to what appeared to be multiple

completed silencer devices; a .45 caliber pistol and a .308 caliber rifle, both with

silencer devices attached to them; a .22315 .56mm multi-caliber barreled rifle

modified to function as a fully-automatic firearm; a bucket containing small

empty metal cylinders consistent with $CO_2$ tubes used for paintball or air guns

adjacent to containers of smokeless gun powder; measuring devices for the

powder; and fusing cord in the shop at the subject property on that day (warrant

Appl. at 15; Supp. Hr'g Trans. at 67-70), even though this information was not

independently corroborated.  See, e.g., United States v. Evans, 4 F.4th 633, 637

(8th Cir. 2021) (law enforcement not required to independently corroborate every

piece of information provided by a confidential informant if some information is

independently corroborated).  In addition, corroboration of previous information

provided by CI 1 during this investigation allowed SA Wambach to conclude

that CI 1 was reliable and provided reliable information.  Id.

To the extent Defendant objects based on Judge Brisbois' conclusion that

the affidavit established probable cause for the warrant, that objection is

overruled.

**2.    Staleness**

A warrant becomes stale if the information supporting the warrant
is not sufficiently close in time to the issuance of the warrant. . . . The
specific context and nature of the warrant must be examined for
each case; there is no bright-line test for determining when
information in a warrant is stale.  Important factors to consider in
determining whether probable cause has dissipated . . . include the
lapse of time since the warrant was issued, the nature of the criminal
activity, and the kind of property subject to the search.  A lapse of
time is least important when the suspected criminal activity is
continuing in nature and when the property is not likely to be
destroyed or dissipated.

United States v. Johnson, 848 F.3d 872, 877 (8th Cir. 2017) (citations omitted) (second set of ellipses in original) (cleaned up).

Here, the Court's de novo review concludes, as did Judge Brisbois, that the criminal activity alleged in the affidavit—the manufacture, possession, and sale of contraband firearms, firearms accessories, and explosive devices—was of a continuing nature. CI 1 first informed law enforcement of Defendant's activities in January 2022, CI 1 conducted controlled purchases in March and May 2022, and CI 1 informed SA Wambach on August 11, 2022 that he was in Defendant's shop on the subject property that day and saw evidence that the activity continued. That provides evidence that the activity was continuing in the same location for eight months up until five days before SA Wambach applied for the search warrant. Even if the Court were to assume the information from the controlled purchases had gone stale by August, which it does not, the affidavit provided information from August 11 that cured that staleness.

To the extent Defendant objects based on Judge Brisbois' conclusion that the affidavit concluded that the information in the warrant was not stale, that objection is overruled.

### 3.    Conclusion

Based on the above discussion, the Court finds that the warrant application established a fair probability that contraband or evidence of a crime would be found in the subject property, <u>Stevens</u>, 530 F.3d at 718, and therefore probable cause existed to support issuance of the search warrant.  SA Wambach's affidavit established both that the information CI 1 provided was reliable and that the information in the affidavit was not stale.

     D.    **<u>Leon</u> Good Faith Exception**

Judge Brisbois also concluded that if the Court finds the warrant invalid, the good-faith exception to the exclusionary rule in <u>United States v. Leon</u>, 468 U.S. 897 (1984) applies in this case.  The Court has not found the warrant invalid and therefore need not address this issue.  However, the Court agrees with Judge Brisbois' <u>Leon</u> analysis.  Accordingly, to the extent Defendant objects based on Judge Brisbois' conclusion that the <u>Leon</u> good faith exception would apply assuming the warrant was not issued upon probable cause, that objection is overruled.

**IV.    ORDER**

Based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1.      The Report and Recommendation dated June 2, 2023 **[Doc. 49]** is

**ADOPTED**; and

2.      Defendant's Motion to Suppress **[Doc. 28]** is **DENIED**.

Dated:  August 17, 2023

s/Michael J. Davis
Michael J. Davis
United States District Court